UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In re: KEVIN ADELL

                Debtor.

Case No. 9:03-bk-23684-ALP
(Chapter 11)

_____

Kevin Adell,

      Appellant/Cross Appellee,

vs.

John Richards Homes Building, Company, LLC,

      Appellee/Cross Appellant.
_____/

Case No. 2:04-cv-455-FtM-33DNF

## ORDER

This matter comes before the Court on appeal from the United States Bankruptcy Court's May 28, 2004, Order denying John Richards Homes Building Company, LLC's Motion to Dismiss (B.K. Doc. #287). Appellant, Kevin Adell, filed an initial brief on October 20, 2004 (Doc. #8), contesting the language the Bankruptcy Court used in the Order denying the Motion to Dismiss. (B.K. Doc. #287)  On March 25, 2005, Appellee, JRH, filed a brief in opposition and a cross appeal brief (Doc. #15) alleging that the Bankruptcy Court erred in failing to grant the Motion to Dismiss (B.K. Doc. #145) despite finding bad faith in its Order denying the Motion to Dismiss (B.K. Doc. #287).

I.  JURISDICTION

This Court functions as an appellate court in reviewing a decision of the Bankruptcy Court. 28 U.S.C. § 158(a)(2005); Lightner v. Lohn, 274 B.R. 545, 548 (M.D. Fla. 2002), aff'd, 52 Fed.Appx. 493 (11th Cir. Sept. 30, 2002)(Table, No. 02-11629). The district court has jurisdiction over final orders and interlocutory orders with leave of the district court. In re The Charter Co., 778 F.2d 617, 620 n.4 (11th Cir. 1985). "A final decision is generally 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. at 621;(quoting Catlin v. United States, 324 U.S. 229, 233 (1945).

II. STANDARD OF REVIEW

In an appellate bankruptcy proceeding, findings of law are reviewed *de novo*. In re Kalter, 292 F.3d 1350, 1352 (11th Cir. 2002). Findings of fact are reviewed under a clearly erroneous standard. FED. R. BANKR. P. 8013; In re McDermott, 286 B.R. 913, 914 (M.D. Fla. 2002). To find clear error, the Court "must be left with the definite and firm conviction that a mistake has been made." In re Scrap Metal Buyers of Tampa, Inc., 253 B.R. 103, 107 (M.D. Fla. 2000). This is a heavy burden to bear for the party seeking to show that the Bankruptcy Court's findings of fact are clearly erroneous. Id. Further, "due regard shall be given to the opportunity of the bankruptcy court judge to judge the credibility

of the witnesses." FED. R. BANKR. P. 8013; see <u>Lightner</u>, 274 B.R. at 550.

### III. BACKGROUND

On November 14, 2003, Adell filed his voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Middle District of Florida. (Doc. #8) A Motion to Dismiss the Chapter 11 Petition (Doc. #145) was filed by JRH on February 10, 2004. (Doc. #8; B.K. Doc. #287) The Florida Bankruptcy Court held an evidentiary hearing on the Motion to Dismiss on April 15, 2004. (Doc. #8; B.K. Doc. #287)

At the hearing it was revealed that Adell held officer positions at Adell Broadcasting Corp.; STN.com, Inc.; The Word Network; and Cubana One Network. (B.K. Doc. #287) Adell still holds these positions. (B.K. Doc. #287) Adell had an annual gross income of $935,660 in 2000; $2,277,724 in 2001; $1,705,683 in 2002; $1,700,000 in 2003; and $380,000 for the first part of 2004. (B.K. Doc. #287).

Adell contracted to purchase land and a newly constructed home from JRH for $3,030,000. (Doc. #8; B.K. Doc. #287) Adell made a $600,000 down-payment. (B.K. Doc. #287) Sometime later, Adell learned that JRH did not own the lot and made an additional $1,200,000 payment to purchase the lot. (B.K. Doc. #287) When Adell discovered that JRH had not begun construction of the house,

Case 2:04-cv-00455-VMC-DNF   Document 26   Filed 05/11/05   Page 4 of 15 PageID 418

he demanded repayment of all of the funds forwarded to JRH. (B.K. Doc. #287) JRH refused to return the money and Adell filed suit in Michigan State Court. (B.K. Doc. #287) JRH removed the suit to the District Court for the Eastern District of Michigan where it remains pending. (B.K. Doc. #287)

In June 2002, Adell filed an involuntary bankruptcy petition under 11 U.S.C. § 303 (2004) of the Bankruptcy Code against JRH in the United States Bankruptcy Court for the Eastern District of Michigan. (Doc. #8; B.K. Doc. #287) Ultimately, the Michigan Bankruptcy Court found that Adell filed the involuntary bankruptcy petition in bad faith. (Doc. #15) On April 25, 2003, the Michigan Bankruptcy Court dismissed the case and granted JRH a Sanctions Award against Adell for $4,100,000 in compensatory damages and $2,100,000 in punitive damages.[1] (Doc. #15) Adell appealed the decision to the Eastern District of Michigan District Court. (Doc. #8) JRH took steps to enforce the Sanctions Award. (Doc. #15; B.K. Doc. #287) Meanwhile, Adell sold between eleven and thirteen vintage cars worth around $700,000 for $536,000; cashed in treasury bills worth $1,700,000; and withdrew $300,000 in cash from his Michigan bank account. (Doc. #15; B.K. Doc. #287) Adell wired the money to an attorney in Florida. (B.K. Doc. #287)

---

[1]The order is cited as In re John Richards Homes Bldg. Co., 291 B.R. 727 (Bankr. E.D. Mich. 2003). The decision was affirmed by the Michigan District Court in In re John Richards Homes Bldg. Co., 312 B.R. 849 (Bankr. E.D. Mich. 2004).

On May 5, 2003, Adell came to Florida. (Doc. #8; B.K. Doc. #287) The next day, he hired a real estate broker to search for a home in Naples, Florida and immediately took steps to secure Florida residency. (Doc. #15; B.K. Doc. #287) He registered to vote, obtained a fishing license, and registered his car. (B.K. Doc. #287) After spending the day looking at houses, Adell signed a contract to purchase a home for $2.8 million that same day. (B.K. Doc. #287) However, he was $400,000 short, so he called his father to request the money. (Doc. #15; B.K. Doc. #287) Adell's father wired the money to the Florida attorney. (B.K. Doc. #287) Adell closed on the Naples home on May 8, 2003. (Doc. #15; B.K. Doc. #287)

Adell filed for declaratory relief in the Circuit Court of Collier County seeking a ruling that his Naples home was homestead protected by Article X, Section 4 of the Florida Constitution. (Doc. #15; B.K. Doc. #287) JRH removed the action to the Bankruptcy Court for the Middle District of Florida and then filed a motion to transfer the action to the Eastern District of Michigan. (Doc. #15; B.K. Doc. #287) On June 9, 2003, the Florida Bankruptcy Court granted the transfer. (Doc. #15; B.K. Doc. #287)

The Michigan Bankruptcy Court entered an order on September 17, 2003,[2] which found that Adell's Naples home was not covered by

---

[2]The opinion is cited as In re: John Richards Homes Bldg. Co., 298 B.R. 591 (Bankr. E.D. Mich. 2003).

Florida's homestead law because the protections were preempted by 11 U.S.C. § 303(i) and Adell was not a Florida resident. (Doc. #15) The Michigan Bankruptcy Court ordered Adell to sell his Naples home in sixty days and remit the proceeds from the sale to JRH. (Doc. #15) Adell appealed the Michigan Bankruptcy Court order to the District Court for the Eastern District of Michigan and moved for a stay of the sale of the Naples home while the appeal was pending. (Doc. #15) Adell did give the United States Marshal a Rolex watch and a gold money clip to be sold towards payment of the Sanctions Award. (B.K. Doc. #287)

On November 10, 2002, the Michigan District Court granted a stay of the sale of the Naples home pending appeal on the condition that Adell post a $2.8 million cash supersedeas bond. (Doc. #15; B.K. Doc. #287) The Michigan District Court amended its order on November 14, 2003 and held that the $2.8 million supersedeas bond could be posted either in cash or in a surety bond. (Doc. #15; B.K. Doc. #287) On November 14, 2003, Adell filed for Chapter 11 relief in the Bankruptcy Court in the Middle District of Florida and obtained the protections afforded by the automatic stay on the sale of the Naples home. (Doc. #8; B.K. Doc. #287) The Chapter 11 petition was filed three days before the expiration of the sixty day sale order by the Michigan Bankruptcy Court. (B.K. Doc. #287)

JRH filed a Motion to Dismiss the Chapter 11 Petition alleging that it was filed in bad faith. (Doc. #8; B.K. Doc. #287) The

Florida Bankruptcy Court found that the primary reason Adell filed his Chapter 11 Petition was to obtain protection against the sale of his Naples home. (Doc. #15; B.K. Doc. #287) However, the Florida Bankruptcy Court denied the motion to dismiss and granted Adell one more opportunity to confirm a reorganization plan. (Doc. #15; B.K. Doc. #287) On October 20, 2004, Adell filed a notice of appeal with this Court (Doc. #8).

IV. ANALYSIS

Adell first claims that the Florida Bankruptcy Court abused its discretion by finding that Adell was able to post the supersedeas bond. (Doc. #8) Adell contends that he did not learn he could post a bond until November 14, 2003. (Doc. #8) Since that date was a Friday, he believed his home would be lost to him by the following Monday. (Doc. #8) Adell did not have the cash funds available to post the bond. (Doc. #8) In addition, even if he had enough time to secure a mortgage on his home to post a surety bond, he was enjoined by the Michigan Bankruptcy Court from mortgaging the Naples home. (Doc. #8)

However, the Florida Bankruptcy Court found that Adell paid $540,000 to his lawyers, money he allegedly borrowed from his employers, during the sixty day period he was given by the Michigan Court to sell his Naples home. (B.K. Doc. #287; B.K. Doc. #415 at 80) The Florida Bankruptcy Court felt that Adell should have used this money to post the bond to secure the stay of the sale of the

Naples home. (B.K. Doc. #287) In the alternative, the Florida Bankruptcy Court found that Adell could have sought permission from the Michigan Bankruptcy Court to lift the restraint so Adell could mortgage the Naples home to have funds to post the supersedeas bond. (B.K. Doc. #287)

Adell next claims that the Florida Bankruptcy Court abused its discretion by finding that Adell's primary intent in filing for Chapter 11 relief was to save his Naples home. (Doc. #8) While Adell was interested in saving his Naples home, he contends that he also filed for Chapter 11 to avoid the looming appointment of a receiver by the Michigan Court. (Doc. #8; B.K. Doc. #415 at 73-4) At the evidentiary hearing, Adell testified that he did not want to lose his Naples home to JRH and he knew that by filing for Chapter 11, he would obtain an automatic stay that would prevent the sale of his home and the seizure of his personal effects. (B.K. Doc. #415 at 79, 145) In addition, Adell stated that he wanted to pay off his debts. (B.K. Doc. #415 at 89) Adell stated, "I filed so I wouldn't lose my house. It was the only thing I had that I worked for in all those years. And I was getting married on December 20th, and I didn't want to lose the house." (B.K. Doc. #415 at 79) Adell also testified that he was worried about the appointment of a receiver. (B.K. Doc. #415 at 74) While Adell may have also been concerned about the appointment of a receiver, the Florida Bankruptcy Court ultimately determined that Adell's primary

intention was to prevent the sale of his home. (B.K. Doc. #287)

Thus, Adell is not arguing that the Florida Bankruptcy Court incorrectly denied JRH's Motion to Dismiss (Doc. #145). Instead, Adell contends that he does not like the language the Florida Bankruptcy Court used in its Order on the Motion to Dismiss (Doc. #287). (Doc. #8)

This Court is bound by the factual findings of the Florida Bankruptcy Court unless the factual findings are clearly erroneous. See Hammons v. Borg-Warner Acceptance Corp., 614 F.2d 399, 402 (5th Cir. 1980).[3] "A finding of fact is clearly erroneous only 'if the record lacks substantial evidence to support it. . . such that our review of the entire evidence leaves us with the definite and firm conviction that a mistake has been committed.'" In re Spirito, 242 B.R. 47, 48 (M.D. Fla. 1999)(quoting Blohm v. Comm'r of Internal Revenue, 994 F.2d 1542, 1548 (11th Cir. 1993)).

The Florida Bankruptcy Court was presented with all of the evidence submitted by the parties in their pleadings. In addition, The Florida Bankruptcy Court held an evidentiary hearing (B.K. Doc. #415) on the Motion to Dismiss (Doc. #145). Each side presented evidence and was able to cross-examine the witnesses. From all of this oral and written evidence, the Florida Bankruptcy Court

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all cases decided by the former Fifth Circuit Court of Appeals by the close of business on September 30, 1981 as binding precedent.

rendered its decision, highlighting the facts it believed were relevant. The Florida Bankruptcy Court has the best vantage point for accessing the credibility of the witnesses. See Garfinkle v. Weil, 672 F.2d 1340, 1348 (11th Cir. 1982). After reviewing the record, this Court finds that the Florida Bankruptcy Court did not abuse its discretion by finding that Adell was able to post the supersedeas bond and that the primary reason Adell filed for Chapter 11 was to protect his Naples home.

Finally, Adell claims that the Florida Bankruptcy Court abused its discretion by refusing to determine if the Naples home was protected homestead pursuant to Article X, Section 4 of the Florida Constitution. (Doc. #8) The Florida Bankruptcy Court stated that it was not in a position to determine whether the Michigan Bankruptcy Court made correct determinations regarding the Sanction Award and the homestead protection as those issues were best addressed by the pending appeal in the Michigan District Court. (B.K. Doc. #287) This determination by the Florida Bankruptcy Court is clearly not an abuse of discretion. The Florida Bankruptcy Court was without authority to review a decision of the Michigan Bankruptcy Court in the Chapter 11 proceeding pending in Florida.

In its cross appeal, JRH alleges that the Florida Bankruptcy Court erred in failing to dismiss Adell's Chapter 11 Petition under 11 U.S.C. § 1112(b) (2004) despite making findings of bad faith in its Order on Motion to Dismiss (Doc. #287). (Doc. #15) A Chapter

11 Petition may be dismissed for cause under 11 U.S.C. § 1112(b). In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984). While a good faith requirement is not expressly stated in 11 U.S.C. § 1112(b), it has been implied by the courts. Matter of Winn, 43 B.R. 25, 28 (M.D. Fla. 1984) A finding of bad faith justifies dismissal. Albany, 749 F.2d at 674; In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1984); Singer Furniture Acquisition Corp. v. SSMC, Inc., 254 B.R. 46, 51 (M.D. Fla. 2000). While there is no standard test for determining bad faith, "courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions," with the intent to impede upon the right of secured creditors, warrants dismissal for lack of good faith. Albany, 749 F.2d at 674.

The Eleventh Circuit Court of Appeals set forth six factors that may be considered when determining if a petition was filed in bad faith:

(i) The Debtor has only one asset, the Property, in which it does not hold legal title;

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii) The Debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidence an intent to delay

> or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

Id. In rending its decision, the Florida Bankruptcy Court applied a separate set of four factors from various courts as follows:

(1) A two-party dispute pending in a foreign forum may warrant a dismissal. Singer, 254 B.R. at 52-53.

(2) A dispute between a debtor and a secured party in case s where the debtor had of very few unsecured creditors;

(3) A case that includes the new debtor syndrome. In re Natural Land Corp., 825 F.2d 296, 298 (11th Cir. 1987).

(4) A filing to escape the enforcement of a court contempt citation. Winn, 43 B.R. at 28.

(B.K. Doc. #287)

Taking both sets of factors, it is apparent to this Court that the Florida Bankruptcy Court made factual findings evidencing bad faith and warranting dismissal. First, the Florida Bankruptcy Court determined that the primary reason Adell filed for Chapter 11 was to stay the Michigan Bankruptcy Court order mandating the sale of his Naples home. (B.K. Doc. #287) Adell had sixty days to prevent the sale of his home and obtain a conditional stay from the Michigan District Court by posting the supersedeas bond. (B.K. Doc. #287) Instead of posting the supersedeas bond, Adell waited until three days before the sixty day deadline to file for Chapter 11. (B.K. Doc. #287)

In addition, the Florida Bankruptcy Court found that Adell, who had an income of over $7 million dollars in the three years

preceding his petition for Chapter 11, had no problem paying any of his debts before the entry of the Sanctions Award. (B.K. Doc. #287) Thus, the Florida Bankruptcy Court found "the principal if not the sole reason that Debtor filed his Chapter 11 case was to prevent and avoid the possibility of immediate loss of his Naples residence." (B.K. Doc. #287) The Florida Bankruptcy Court noted, "[c]onsidering the totality of the evidence, there is no question that this record more than justifies the findings that this is without a doubt nothing more than a two-party dispute." (B.K. Doc. #287) Nevertheless, the Florida Bankruptcy Court determined that Adell did not file his Chapter 11 Petition to delay the proceedings and granted Adell one more chance to confirm his third Amended Plan. (B.K. Doc. #287) It is significant to note that Adell had made six unsuccessful attempts at obtaining confirmation of his reorganization plan. (Doc. # 24)

Rulings by the bankruptcy court made pursuant to the Bankruptcy Code are only reviewed for abuse of discretion. See Albany, 749 F.2d at 674. "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or . . . [makes] findings of fact that are clearly erroneous." Birmingham Steel Corp. v. Tennessee Valley Auth., 353 F.3d 1331, 1335 (11th Cir. 2003) (quoting Mincey v. Head, 206 F.3d 1106, 1137 n. 69 (11th Cir. 2000)). The facts show that the Florida Bankruptcy Court abused

its discretion by finding that Adell met the factors for filing his Chapter 11 Petition in bad faith but failed to dismiss the Chapter 11 Petition. Since the Chapter 11 Petition was filed in bad faith, it appears that a successful reorganization plan can never be confirmed.

> Section 1129 forbids a court form accepting a reorganization plan which has not been proposed in good faith. It seems questionable to us that the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement.

Natural, 825 F.2d 296 at 298. In essence. the Florida Bankruptcy Court found that Adell's Chapter 11 Petition was filed in bad faith yet, refused to dismiss the tainted Chapter 11 Petition. In light of the case law, this Court has no choice but to find that the Florida Bankruptcy Court abused its discretion.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

The United States Bankruptcy Court for the Middle District of Florida's Order on Motion to Dismiss (B.K. Doc. #287) is **REVERSED**. The Motion to Dismiss (B.K. Doc. 145) is **GRANTED**. Adell's request for oral argument (Doc. #8) is **DENIED**. The Clerk shall enter judgment accordingly. The Clerk is further directed to terminate any previously scheduled deadline and pending motions.

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this 11th day of May, 2005.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record